## Adams *against* Rogers.

A contract for the sale and delivery of flour, in which it is warranted to be superfine, is a warranty of the article according to the standard for exportation: and that it shall be of due fineness, and good and merchantable as superfine, according to the standard of inspection of flour required by the act of the 15th of April 1835, relating to inspections of flour in the different parts of the commonwealth.

ERROR to the common pleas of *Allegheny* county.

Abraham Adams against William Rogers. This suit was brought to recover damages for the alleged breach of a contract for the delivery of two hundred barrels of flour, which the plaintiff alleged was not superfine. The contract was as follows:

"Received, May 10th, 1838, of Abraham Adams, 200 dollars in part pay for two hundred barrels of wheat flour, warranted to be superfine, to be delivered in Pittsburgh, in perfect shipping order, on or before the 25th of May 1838, the price of the flour to be five dollars and thirty-seven cents.          WILLIAM ROGERS."

The proof was that the flour was delivered to the plaintiff, who sent it to Philadelphia, where it was inspected and condemned and sold below the market price of superfine flour.

There was no inspector of flour appointed for Pittsburgh at the time, but the defendant called several witnesses to testify as to the quality of the flour, and some of whom proved that the standard of superfine flour at Pittsburgh and Philadelphia was different; that what would be estimated as superfine at Pittsburgh, would not pass as such at Philadelphia.

The plaintiff contended that the inspection at Philadelphia was the test by which the quality of the flour was to be judged, and the fact of its having been condemned by the officer legally appointed for its inspection was conclusive of its quality.

The defendant, on the contrary, insisted that its quality was to

IX.—L*

[Adams v. Rogers.]

be judged of at the place of its delivery, under the contract, and according to the standard there.

The court below adopted the positions taken by the defendant, and so instructed the jury. Verdict and judgment accordingly.

*Knox*, for plaintiff in error, referred to the Act of 1835, by which, he contended, a uniform legal standard was fixed, and by which all contracts were to be interpreted: that the custom at the place of delivery, or the particular standard there should not control the contract of the parties: that superfine flour meant that which was such according to the act of assembly.

*Eyster* and *Shayler*, for defendant in error.

The opinion of the court was delivered by

SERGEANT, J.—The policy of our laws has long been to provide for the inspection of flour intended for exportation from the state, in order that its quality may be ascertained abroad by an authentic testimonial given by public authority: and this is done as well to preserve the reputation of this staple commodity of the state, as to guard the purchaser from fraud in his dealings. Flour not intended for exportation need not be inspected, nor is it important to the public that there should be any public intervention between the seller and the buyer: the parties judge for themselves, and make their own contract for such articles as may suit them. They may choose to consider as superfine or middlings, what would not pass as such according to the legal standard, and great quantities of such flour no doubt are disposed of in the market, and enter into domestic consumption. It is manifest, therefore, that a standard of superfine, depending on the acceptation of the term at a particular place of delivery, such as Pittsburgh, among dealers and others with whom in many cases the precise quality might be of minor importance, would be no standard at all: or at least would be so uncertain and equivocal as to furnish no guide for the interpretation of a contract, in which the article is warranted to be superfine, to be delivered at Pittsburgh, (which is a place included within the inspection laws,) in perfect shipping order, as was the case here. Such a warranty is a warranty of the article according to the standard for exportation; it is a warranty that the article shall be of due fineness, and good and merchantable as superfine, according to the standard of inspection of flour required by the act of the 15th of April 1835, relating to inspections of flour in the different parts of the commonwealth. This act provides a standard according to which all flour intended for exportation is to be judged: and from the terms here used, "in perfect shipping order," it is plain superfine flour of the quality for exportation was intended. When the law provides a standard in the very case, the parties must be supposed to have reference to that, unless the contrary be stipulated.

[Adams v. Rogers.]

I agree that the standard is to be the Pittsburgh inspection, and that the party in such a contract would not be conclusively bound by an inspection at another place within the state or elsewhere: though the latter would be evidence to show its quality, subject to explanation. At the same time, it would seem to me, that the legislature did not intend to have different standards of flour in different parts of the state: they must have meant that the standard should, as far as possible, be uniform, because the rule for inspecting contained in the act is the same in all places, and the Pennsylvania stamp of flour should, as nearly as possible, be of the same quality in foreign places, whether brought from the counties on the east or west of the mountains. Exact similitude is not perhaps attainable, from the necessity of having different inspectors in different places: but this is the imperfection of men; the law would seem to contemplate the same standard every where. Then by this contract the flour was to be superfine according to the Pittsburgh inspection of flour for exportation, and was to stand the inspection there as such. It seems, however, that there was no inspector appointed at the time for Pittsburgh, so that such an inspection could not be had. But in that case the flour ought to be such as would have passed inspection as superfine provided there had been an inspector; or in other words such as, according to the act of assembly, would have been of the due quality and fineness as superfine. And if, from the evidence on the part of the plaintiff, the jury believed that the flour, when delivered at Pittsburgh by the defendant, was made of damaged or unsound wheat, was of a bad smell, unwholesome or in other respects unsound and inferior, it is manifest it could not be superfine according to the provisions of the act of 1835, and could not have passed inspection, whatever might be the practice of Pittsburgh dealers among themselves in relation to flour, or their opinions of what is superfine or otherwise. If, however, it was superfine when delivered there within the meaning of the act of assembly, but the injury or depreciation arose afterwards from any of the causes assigned, nothing of this kind could affect the contract. The examination of some flour at the defendant's mill by the plaintiff when about purchasing, ought to have no influence whatever in the case, because he did not rely on that, but took an express warranty, which must be shown by the defendant to have been strictly and faithfully complied with.

Judgment reversed, and a *venire facias de novo* awarded.